GERHARDA H. SANCHEZ, Petitioner v. TOWN OF BEAUFORT, BEAUFORT BOARD OF ADJUSTMENT, BEAUFORT HISTORIC PRESERVATION COMMISSION, and DOUGLAS E. SMITH, Respondents

No. COA10-750

(Filed 3 May 2011)

### 1. Standing— challenge—Certificate of Appropriateness— special damages shown

Petitioner established the special damages necessary to confer standing to challenge the Board of Adjustment's order requiring the Beaufort Historic Preservation Commission to issue a Certificate of Appropriateness to respondent Smith for the structure Smith proposed to build.

### 2. Administrative Law— Board of Adjustment—Certificate of Appropriateness—height requirement—arbitrary and capricious

The Board of Adjustment did not err by reversing the decision of the Beaufort Historic Preservation Commission (BHPC) and ordering the BHPC to issue respondent Smith a Certificate of Appropriateness for the structure Smith proposed to build. The

height requirement imposed by the BHCP was arbitrary and capricious.

**3. Administrative Law— Board of Adjustment—Certificate of Appropriateness—denial not based on vistas**

Petitioner's argument that the Beaufort Historic Preservation Commission's (BHPC) decision to deny respondent Smith a Certificate of Appropriateness should have been upheld because Smith's application violated BHPC guidelines protecting the historic district's "vistas" was overruled. The BHPC did not reach its decision to deny Smith's application on the basis of any guidelines regulating vistas.

Appeal by petitioner from order entered 24 March 2010 by Judge W. Allen Cobb, Jr. in Carteret County Superior Court. Heard in the Court of Appeals 1 December 2010.

*Harvell and Collins, P.A., by Wesley A. Collins and Russell C. Alexander, for petitioner-appellant.*

*Kirkman Whitford Brady & Berryman, P.A., by Neil B. Whitford, for respondent-appellee Town of Beaufort.*

*Poyner Spruill LLP, by Chad W. Essick, for respondent-appellee Douglas E. Smith.*

CALABRIA, Judge.

Gerharda H. Sanchez ("petitioner") appeals the superior court's order affirming the decision of the Town of Beaufort ("the Town") Board of Adjustment ("the BOA"). The BOA reversed the decision of the Beaufort Historic Preservation Commission ("the BHPC") and ordered the BHPC to issue a Certificate of Appropriateness ("COA") to respondent Douglas E. Smith ("Smith"). We affirm.

I. Background

Petitioner lives at 117 Front Street, in the historic district of Beaufort, North Carolina. Petitioner's home is located across the street from a property owned by Smith. Smith's property, located at 122 Front Street, contains a sixteen foot, two inch structure known as the "Carpenter Cottage." Smith purchased the property intending to demolish the Carpenter Cottage and construct a two-story structure in its place. In order to commence demolition and construction in the historic district, Smith was required by statute to submit applications

for COAs to the BHPC. The BHPC denied three of Smith's applications, and Smith appealed these denials to the BOA. The resulting BOA decisions were then appealed to the Carteret County Superior Court by either Smith or the Town, depending upon which party prevailed before the BOA.

The Carteret County Superior Court ordered Smith and the Town, including two members of the BHPC, to conduct mediation. The mediation was conducted in August 2008, and the parties reached a proposed settlement whereby Smith agreed to submit a new application for a one-and-one-half story structure with the condition that, if the new application was approved by the BHPC, all parties would dismiss any pending litigation. Smith submitted the new COA application, which proposed a one-and-one-half story structure that was twenty-nine feet tall, to the BHPC on 14 March 2009. The new application was considered and discussed at three separate public BHPC hearings, 7 April 2009, 5 May 2009, and 2 June 2009.

At the 7 April 2009 BHPC hearing, Smith explained his proposal to demolish the Carpenter Cottage as well as his construction plans for a new structure on the property. Smith's demolition plan was approved since the Carpenter Cottage was found to be beyond repair. However, petitioner, along with other members of the community, objected to the height of Smith's proposed new construction. Specifically, petitioner objected that the new structure would inhibit her view of Carrot Island and Taylor's Creek from her porch. Petitioner's husband testified that he estimated that the view added approximately $100,000-$150,000 of value to petitioner's home. At the conclusion of the hearing, the COA for new construction was tabled so that the BHPC could conduct further research regarding the possibility of building a one-and-one-half story structure at a reduced height.

At the 5 May 2009 hearing, Smith learned the BHPC would issue a COA for the construction of his proposed structure if he reduced the maximum height of the structure to twenty-four feet. On 2 June 2009, Smith presented additional drawings and explained his inability to reduce the height to twenty-four feet. Smith provided computer-aided design drawings that were professionally produced to demonstrate that a height of twenty-seven feet, three inches was the lowest height he would be able to build a structure that could be considered a reasonable use of the property. Smith explained to the BHPC the details regarding the proposed height of the ceilings on the first and second floor, as well as the requirements for the height of the foun-

dation to comply with flood safety regulations. Nevertheless, the BHPC voted to deny Smith's application for a COA, because the twenty-seven foot, three inch height was considered non-conforming to the maximum height of twenty-four feet that had been approved at the conclusion of the 5 May 2009 hearing.

Smith appealed the BHPC's decision to the BOA. Smith's appeal was heard at a BOA hearing on 26 October 2009. At the hearing, Smith's counsel and the attorney for the Town addressed Smith's appeal. Petitioner's attorney also attempted to address the BOA, but the Town's attorney advised the BOA that the superior court was the proper forum for any appeals. Consequently, the BOA did not consider the arguments of petitioner's attorney. On 3 December 2009, the BOA entered an order which determined that the BHPC's twenty-four foot height requirement was arbitrary and capricious and remanded Smith's application to the BHPC with instructions to issue Smith a COA. On 15 December 2009, the BHPC voted to issue Smith the COA.

Petitioner filed a petition for a writ of *certiorari* in the Carteret County Superior Court, requesting that the court reverse the decision of the BOA and uphold the BHPC's denial of Smith's COA application. In response to the petition, the Town filed a response which asserted, *inter alia,* that petitioner did not have standing to challenge the BOA's decision. On 24 March 2010, the superior court entered an order affirming the BOA's decision. The superior court's order stated, "the height limitation for the proposed structure of 24 feet was arbitrary and not supported by evidence" and "the proposed structure height of 27 feet, 3 inches is congruous with the structures in the historic district as required by law." Petitioner appeals.

## II. Standing

[1] As an initial matter, we address the Town's argument that petitioner's appeal should be dismissed because petitioner lacks standing. While the Town raised this argument before the superior court, it was not explicitly addressed in the court's order affirming the decision of the BOA.[1] Nevertheless, since "[s]tanding is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction, . . . issues pertaining to standing may be raised for the first time on appeal[.]" *Aubin v. Susi,* 149 N.C. App. 320, 324, 560 S.E.2d 875, 878-79 (2002).

"City ordinances creating historic districts, as other ordinances which limit the use of property, are zoning ordinances." *Unruh v.*

---

1. However, the superior court necessarily concluded that petitioner had standing by hearing the merits of her appeal.

*City of Asheville*, 97 N.C. App. 287, 289, 388 S.E.2d 235, 236 (1990). In the context of zoning ordinance disputes, our Supreme Court has stated:

> The mere fact that one's proposed lawful use of his own land will diminish the value of adjoining or nearby lands of another does not give to such other person a standing to maintain an action, or other legal proceeding, to prevent such use. If, however, the proposed use is unlawful, as where it is prohibited by a valid zoning ordinance, the owner of adjoining or nearby lands, who will sustain special damage from the proposed use through a reduction in the value of his own property, does have a standing to maintain such proceeding.

*Jackson v. Bd. of Adjust.*, 275 N.C. 155, 161, 166 S.E.2d 78, 82 (1969) (internal citations omitted).

Pursuant to N.C. Gen. Stat. § 160A-400.9, a historic preservation commission "shall . . . prepare and adopt principles and guidelines . . . for new construction, alterations, additions, moving and demolition" in the historic district. N.C. Gen. Stat. § 160A-400.9 (c) (2009). Moreover,

> no exterior portion of any building or other structure (including masonry walls, fences, light fixtures, steps and pavement, or other appurtenant features) . . . shall be erected, altered, restored, moved, or demolished . . . within [a historic] district until after an application for a certificate of appropriateness as to exterior features has been submitted to and approved by the preservation commission.

N.C. Gen. Stat. § 160A-400.9 (a) (2009). There is no dispute that, pursuant to N.C. Gen. Stat. § 160A-400.9 (a), Smith must comply with established BHPC guidelines in order to obtain a COA from the BHPC and legally construct a new structure in place of the Carpenter Cottage. Although petitioner alleged that Smith's application did not comply with BHPC guidelines, in order to establish her standing, petitioner still has the burden of demonstrating that she would sustain " 'special damages' distinct from the rest of the community." *Heery v. Zoning Bd. of Adjust.*, 61 N.C. App. 612, 614, 300 S.E.2d 869, 870 (1983).

When making a standing determination, "we view the allegations as true and the supporting record in the light most favorable to the non-moving party." *Mangum v. Raleigh Bd. of Adjust.*, 362 N.C. 640, 644, 669 S.E.2d 279, 283 (2008). Petitioner alleged in her petition for writ of *certiorari* that her property was directly across the street

from Smith's property. This allegation "in and of itself, is insufficient to grant standing, [but] it does bear some weight on the issue of whether the complaining party has suffered or will suffer special damages distinct from those damages to the public at large." *Id.*

Petitioner additionally alleged that the height of Smith's proposed structure did not conform with BHPC guidelines and thus should not have been granted a COA. She also alleged that at its proposed height, Smith's non-conforming structure would interfere with her use of her property by causing her to lose her private waterfront view. Both petitioner and her husband asserted during HPC hearings on Smith's application that the loss of this view would reduce the value of petitioner's property by at least $100,000. Treating petitioner's allegations as true and viewing the supporting record in the light most favorable to petitioner, she has established the special damages necessary to confer standing to challenge the BOA's decision. Accordingly, we address the merits of petitioner's appeal.

### III. Standard of Review

**[2]** Petitioner argues that the BOA erred by reversing the decision of the BHPC and ordering the BHPC to issue Smith a COA. The review of the BHPC's decision by the BOA, the superior court, and this Court is an appellate review in the nature of *certiorari*. *See* N.C. Gen. Stat. § 160A-400.9 (e) (2009). A proper *certiorari* review includes:

(1) Reviewing the record for errors in law,

(2) Insuring that procedures specified by law in both statute and ordinance are followed,

(3) Insuring that appropriate due process rights of a petitioner are protected including the right to offer evidence, cross examine witnesses, and inspect documents,

(4) Insuring that decisions of . . . boards are supported by competent, material and substantial evidence in the whole record, and

(5) Insuring that decisions are not arbitrary and capricious.

*Fantasy World, Inc. v. Greensboro Bd. of Adjust.*, 128 N.C. App. 703, 706-07, 496 S.E.2d 825, 827 (1998) (citation omitted).

### III. Congruity

While N.C. Gen. Stat. § 160A-400.9(a) requires the issuance of a COA before construction can occur in a historic district, the statute

also limits the discretion of a historic preservation commission in determining whether a COA should issue.

> Under N.C.G.S. § 160A-400.9(a), the discretion of the preservation commission is limited: "the commission . . . shall take no action under this section except to prevent the construction . . . which would be *incongruous with the special character of the landmark or district." Id.* (emphasis added). In *A-S-P Associates,* the Court interpreted this phrase to be "a contextual standard." *A-S-P Associates,* 298 N.C. at 222, 258 S.E.2d at 454. "In this instance the standard of 'incongruity' must derive its meaning, if any, from the total physical environment of the Historic District." *Id.*

*Meares v. Town of Beaufort,* 193 N.C. App. 96, 101, 667 S.E.2d 239, 242 (2008). In the instant case, the BHPC determined that any structure on Smith's property over twenty-four feet in height would be incongruous with the historic district,[2] and thus, denied Smith's application. On appeal, the BOA determined that this height requirement was arbitrary and capricious. We agree.

"An administrative ruling is deemed arbitrary and capricious when it is whimsical, willful, and an unreasonable action without consideration or in disregard of facts or law or without determining principle." *Ward v. Inscoe,* 166 N.C. App. 586, 595, 603 S.E.2d 393, 399 (2004) (internal quotations, citations, and brackets omitted). "[A] determination which is not supported by substantial evidence is an arbitrary decision. A decision which lacks a rational basis—where there is no substantial relationship between the facts disclosed by the record and conclusions reached by the board—is also termed 'arbitrary.'" *Godfrey v. Zoning Bd. of Adjust.,* 317 N.C. 51, 60, 344 S.E.2d 272, 278 (1986) (internal citations omitted).

In the instant case, the whole record does not contain substantial evidence that would support the BHPC's determination that Smith's proposed new construction was not congruous with the rest of the historic district because it exceeded twenty-four feet. While there was evidence presented before the BHPC that there were other one-and-one-half story structures in the historic district that ranged

---

2. The BHPC did not issue a formal order with findings of fact or conclusions of law. However, the transcript makes clear that the BHPC denied Smith's application because the proposed construction exceeded the twenty-four foot requirement it had previously established. This is sufficient for appellate review. *See Ballas v. Town of Weaverville,* 121 N.C. App. 346, 350-51, 465 S.E.2d 324, 327 (1996) ("The failure to make findings of fact is not, however, fatal if the record sufficiently informs [the court] of the basis of decision of the material issues[.]" (internal quotation and citation omitted)).

between twenty and twenty-two feet in height, there was also evidence presented that the residences closest to the Smith property ranged from twenty-six to thirty-five feet in height. N.C. Gen. Stat. § 160A-400.9 does not permit the BHPC to "cherry pick" certain properties located within the historic district in order to determine the congruity of proposed construction; instead, the BHPC must determine congruity contextually, based upon "the total physical environment of the Historic District." *Meares*, 193 N.C. App. at 101, 667 S.E.2d at 242 (internal quotation and citation omitted). Since a twenty-four foot maximum height requirement was not supported by the facts disclosed by the record, the decision of the BHPC to deny Smith's application was arbitrary and cannot stand.

Moreover, it is clear from the transcripts of the BHPC hearings that the BHPC's twenty-four foot height requirement was not reached on the basis of any particular determining principle. Rather, each BHPC member reached what he or she considered an appropriate height based on their own personal preferences. For example, BHPC member Fred McCune ("McCune") indicated that he reached the twenty-four foot requirement in the following manner:

> I think that five feet (5') could be removed from the project without materially harming the internal design features, and I think that it is important to reduce the height on the south side of Ann Street. I mean Front Street. I think it is a unique area, and it does have a . . . there isn't much to compare it to, but I think that at twenty-nine foot (29') structure . . .

> Chairman Wilson: What are you basing your reduction of five feet (5') on?

> [McCune]: Well five feet (5') would be if you had a . . . This is his determination, with a ten foot (10') ceiling downstairs, and a nine foot (9') ceiling upstairs, if you had eight foot (8') ceilings, that's three feet (3').

> . . .

> And then, if the duct work was to be relocated, that's two more feet. So that would be five feet (5') without a lot of material changes. *Now it could be a different number, but I'm just throwing that out.*

(Emphasis added). Similarly, BHPC member Dan Krautheim ("Krautheim") made his own calculations on how the interior of Smith's structure could be configured so that it could reach a height of "twenty two and a half or twenty four" feet. BHPC member Les

Sadler ("Sadler") simply stated that "twenty five feet (25') is a reasonable height." When the twenty-four foot requirement was put to a vote by the BHPC, Krautheim explicitly admitted that none of the BHPC guidelines were used to determine that height. Since the twenty-four foot height requirement was established by each member of the BHPC without the use of any determining principle from the BHPC guidelines, it was clearly arbitrary. Petitioner's arguments to the contrary are overruled.

### V. Vista

[3] Petitioner additionally argues that the BHPC's decision should have been upheld because Smith's application violated BHPC guidelines protecting the historic district's "vistas." However, the record clearly indicates that the BHPC did not reach its decision to deny Smith's application on the basis of any guidelines regulating vistas. During one of the meetings, BHPC members Krautheim and Sadler engaged in the following dialogue:

> [Krautheim]: We see the impact of the vista[3] on twenty two feet (22'). So you know you're going to lose that.
>
> [Sadler]: That vista is gone.
>
> [Krautheim]: It's gone, let's face it. The only way it's going to stay there is if he builds an eighteen foot (18') structure. And you're still losing some of it.

As the BHPC continued to deliberate, BHPC Chairman Mamre Wilson reiterated that "anything above sixteen feet, two inches is going to obstruct the view." Thus, the BHPC believed that any protected vista would be obstructed once a structure over sixteen feet, two inches was constructed. Since the BHPC was willing to allow Smith to construct a structure that was twenty-four feet in height, which was almost eight feet higher than sixteen feet, two inches, it could not have denied Smith's subsequent COA application on the grounds of any vista protections. Consequently, the BHPC's decision cannot be upheld on this basis. This argument is overruled.

### V. Conclusion

Treating petitioner's allegations as true and viewing the record in the light most favorable to petitioner, she established standing to

---

3. The vista discussed by the BHPC members referred to the view of the general public from the street level on Front Street. The lost "vista" which petitioner alleged damaged the value of her property was a private vista from a porch located on her property.

challenge the decision of the BOA. The BHPC's twenty-four foot height requirement for Smith's COA application was not supported by the facts disclosed by the whole record and was made without the use of any determining principle. Therefore, the BOA correctly reversed the BHPC's arbitrary decision and ordered the BHPC to issue a COA to Smith. The decision of the superior court, affirming the decision of the BOA, is affirmed.

Affirmed.

Judges HUNTER, Robert C. and ELMORE concur.