MURPHY
 
 ,
 
 Judge
 
 .
 

 The Cherry Community Organization ("CCO") appeals from the trial court's order granting the City of Charlotte and the City Council's (collectively, "Charlotte") Motion for Summary Judgment, granting Midtown Area Partners II, LLC's ("MAP") Motion for Summary Judgment, and denying CCO's Motion for Summary Judgment. Specifically, CCO maintains: (1) Charlotte's approval of an oral amendment made to MAP's rezoning petition violated its ordinance and was arbitrary and capricious; and (2) Charlotte's violation of city ordinances and N.C.G.S. § 160A-383 renders the zoning amendment null and void. However, because we conclude
 
 *470
 
 that CCO failed to show it had standing to maintain its declaratory judgment action, we dismiss this appeal and need not reach the issues raised by CCO.
 

 Background
 

 CCO is a nonprofit organization that endeavors to protect the residential character, safety, and stability of, as well as the affordable housing within, the Cherry Community ("Cherry") - a historically African American neighborhood located in the Midtown Morehead Cherry District of Charlotte. In 1999 and 2012, respectively, Charlotte adopted the Cherry Small Area Plan and the Midtown Morehead Cherry Area Plan (the "MMC Area Plan") to guide land-use decisions in Cherry.
 

 The real property (the "Parcels") at issue in this case involves four parcels owned by MAP in and around Cherry.
 
 [1]
 
 In August 2014, MAP submitted an application to Charlotte ("Initial Rezoning Petition") to rezone the Parcels from general-use districts to mixed-use development districts in furtherance of plans to construct a mixed-use development, which was to contain office, retail, hotel, and residential spaces. Specifically, MAP proposed constructing a 270,000 square foot building, 187,450 square foot parking structure, and 8 single-family attached dwelling units. The building's then-proposed height was 119 feet.
 

 Two community meetings were held to discuss the nature of the proposed rezoning, and CCO filed a Protest Rezoning Petition urging Charlotte to deny MAP's Initial Rezoning Petition.
 
 [2]
 
 MAP thereafter submitted an Amended Rezoning Application (the "First Amended Petition") in which it increased the size of the rezoning site from 1.698 to 1.99 acres and requested that MAP be given five-year vested rights regarding its rezoning site plan.
 

 On 12 February 2015, MAP submitted a Second Amended Rezoning Application, which changed the requested zoning of the Parcels "to B-2 (PED-O), UR-C (PED-O) and R-8 MF (PED-O)," with five-year vested rights. On the basis of the amendment, a new community meeting was held on 4 March 2015. It is this Second Amended Petition (the "Rezoning Petition") that is at issue in this case.
 

 Charlotte held a public hearing on the Rezoning Petition on 20 April 2015. Representatives of MAP and CCO attended and commented on the Rezoning Petition. Charlotte's Planning Department staff also commented that: (1) MAP's proposed development was inconsistent with the Pedestrian Zoning Overlay District ("PED Overlay") requirements that limit buildings in the area to a maximum height of 100 feet; (2) the proposed development was inconsistent with the MMC Area Plan recommendations relating to the maximum permissible building height, street setbacks, streetscapes, and residential density; and (3) the proposed parking structure would encroach on a portion of the area that the MMC Area Plan recommended for residential development.
 

 By the time the Rezoning Petition came on for a vote before Charlotte at its meeting, MAP lowered the projected height of its building from 119 feet to 106 feet, which was still 6 feet over the maximum height permitted by the PED Overlay. The motion to approve the Rezoning Petition failed.
 

 Several hours later, prior to adjourning the meeting, MAP agreed to bring the building's height down to a compliant 100 feet. Accordingly, Charlotte passed a motion to "reconsider" the Rezoning Petition as orally amended at the next scheduled meeting. At the next meeting on 28 September 2015, Charlotte voted 10-to-1 against sending the orally amended Rezoning Petition back to the Zoning Committee for a recommendation, and
 
 *471
 
 10-to-1 in favor of rezoning the Parcels as outlined.
 

 CCO petitioned the Mecklenburg County Superior Court for Writ of Certiorari and later added a claim for declaratory judgment against Charlotte and MAP. After the trial court dismissed CCO's certiorari petition, all parties moved for summary judgment on CCO's declaratory judgment claim. On 15 August 2016, the trial court granted summary judgment in favor of Charlotte and MAP and dismissed the case with prejudice. CCO timely appealed.
 

 Standing
 

 Typically, landowners may use their property as they wish, free from the interference of the government. However, our Supreme Court has held that lawful zoning ordinances are an exercise of the State's police powers.
 
 See e.g., Turner v. City of New Bern,
 

 187 N.C. 541
 
 , 549,
 
 122 S.E. 469
 
 , 474 (1924). The interference by the State, by exercising its police powers, is the pinnacle of intrusion on private property rights by the government. Accordingly, our Courts appropriately have set a high bar for third parties to establish standing to bring actions relating to the exercise of police powers between the State and its citizens. CCO does not clear the bar to allow it to privately exercise Charlotte's police power over MAP.
 

 As a preliminary matter, we must address Charlotte and MAP's assertion that CCO lacks standing to prosecute this declaratory judgment action.
 
 Already, LLC v. Nike, Inc.,
 

 568 U.S. 85
 
 , 90-91,
 
 133 S.Ct. 721
 
 , 726,
 
 184 L.Ed.2d 553
 
 , ___ (2013) ("We have repeatedly held that an actual controversy must exist not only at the time the complaint is filed, but through all stages of the litigation." (citation and internal quotation marks omitted));
 
 see Burgess v. Gibbs,
 

 262 N.C. 462
 
 , 465,
 
 137 S.E.2d 806
 
 , 808 (1964) ("A universal principle as old as the law is that the proceedings of a court without jurisdiction of the subject matter are a nullity."). Standing must be maintained throughout the entirety of the suit. Charlotte and MAP contend that CCO has not forecasted evidence that it sustained special damages as a result of the rezoning at issue that are distinct from the rest of the community.
 
 [3]
 
 We agree and therefore modify and affirm the decision of the trial court to dismiss CCO's claims and, as a result, we need not reach the merits of CCO's appeal.
 

 Standing refers to "[w]hether a party has a sufficient stake in an otherwise justiciable controversy" so as to properly seek adjudication of a matter,
 
 Sierra Club v. Morton,
 

 405 U.S. 727
 
 , 731-32,
 
 92 S.Ct. 1361
 
 , 1364,
 
 31 L.Ed. 2d 636
 
 , 641 (1972), and it "is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction,"
 
 Thrash Ltd. P'ship v. Cty. of Buncombe,
 

 195 N.C. App. 678
 
 , 680,
 
 673 S.E.2d 706
 
 , 708 (2009) (citation omitted). As standing is a question of law, we review the issue of standing
 
 de novo, Cherry v. Wiesner,
 
 ___ N.C. App. ___, ___,
 
 781 S.E.2d 871
 
 , 876,
 
 disc. review denied,
 

 369 N.C. 33
 
 ,
 
 792 S.E.2d 779
 
 (2016), and the party invoking jurisdiction, in this case CCO, bears the burden of establishing standing,
 
 Thrash Ltd. P'ship,
 

 195 N.C. App. at 680
 
 ,
 
 673 S.E.2d at 708
 
 .
 

 Specifically, "[s]ince standing is a jurisdictional requirement, the party seeking to bring [a] claim before the court must include allegations which demonstrate why she has standing in the particular case[.]"
 
 Wiesner,
 
 ___ N.C. App. at ___,
 
 781 S.E.2d at 877
 
 . In establishing the elements of standing, "each element must be supported in the same way as any other matter on which [CCO] bears the burden of proof, i.e.,
 
 with the manner and degree of evidence required at the successive stages of the litigation.
 
 "
 

 Id.
 

 at ___,
 
 781 S.E.2d at 877
 
 (quoting
 
 Neuse River Found,
 
 155 N.C. App. at 113, 574 S.E.2d at 51) (emphasis added).
 

 A party only has standing to challenge a zoning ordinance in an action for declaratory judgment when it "has a specific personal and legal interest in the subject matter affected by the zoning ordinance and... is directly and adversely affected thereby."
 

 *472
 

 Taylor v. City of Raleigh,
 

 290 N.C. 608
 
 , 620,
 
 227 S.E.2d 576
 
 , 583 (1976) (citations omitted). In this way, the standing requirement for an action for declaratory judgment is analogous to the requirement that a party seeking review of a municipal decision by writ of certiorari suffer damages that are "distinct from the rest of the community."
 
 Compare Heery v. Zoning Bd. of Adjustment,
 

 61 N.C. App. 612
 
 , 614,
 
 300 S.E.2d 869
 
 , 870 (1983) (holding that petitioners failed to allege that they would be subject to special damages distinct from the rest of the community),
 
 with Wiesner,
 
 ___ N.C. App. at ___,
 
 781 S.E.2d at 880
 
 (holding that allegations that fail to demonstrate special damages distinct to respondent and instead reference generalized damage to the overall neighborhood are insufficient to establish a party has standing to sue).
 

 Although owning property immediately adjacent to or within close proximity of the subject property is not in and of itself sufficient to plead special damages, "it does bear some weight on the issue of whether the complaining party has suffered or will suffer special damages distinct from those damages to the public at large."
 
 Mangum v. Raleigh Bd. of Adjust.,
 

 362 N.C. 640
 
 ,
 
 669 S.E.2d 279
 
 , 283 (2008);
 
 see also Vill. Creek,
 
 135 N.C. App. at 486, 520 S.E.2d at 796 (citing
 
 Godfrey v. Zoning Bd. of Adjustment,
 

 317 N.C. 51
 
 , 66,
 
 344 S.E.2d 272
 
 , 281 (1986), for the proposition that "owners of property in the adjoining area affected by [an] ordinance[ ] are parties in interest entitled to maintain [a declaratory judgment] action" (citation and internal quotation marks omitted)).
 

 Specifically, this Court has recognized that "[e]xamples of adequate pleadings include allegations that the rezoning would cut off the light and air to the petitioner's property, increase the danger of fire, increase the traffic congestion and increase the noise level."
 
 Wiesner,
 
 ___ N.C. App. at ___,
 
 781 S.E.2d at 877
 
 . Further, the owner of property has standing to maintain a legal action to prevent a proposed use of nearby or adjacent property where he will suffer a reduction in the value of his property pursuant to a proposed use that is prohibited by a valid zoning ordinance.
 
 Jackson v. Guilford Cty. Bd. of Adjustment,
 

 275 N.C. 155
 
 , 161,
 
 166 S.E.2d 78
 
 , 82 (1969).
 

 "Once the petitioner's aggrieved status is properly put in issue, the trial court must then,
 
 based on the evidence presented,
 
 determine whether an injury has resulted or will result from the zoning action."
 

 Id.
 

 at ___,
 
 781 S.E.2d at 877
 
 (emphasis added) (quoting
 
 Kentallen, Inc. v. Town of Hillsborough,
 

 110 N.C. App. 767
 
 , 769-70,
 
 431 S.E.2d 231
 
 , 232 (1993) (citations, quotation marks, and brackets omitted)).
 

 In the instant case, CCO pleaded in its complaint that it:
 

 is an aggrieved party who owns real property immediately adjacent to and/or in close proximity with the subject property, and will suffer special damages in the form of increased noise, traffic and parking, decreased visibility due to the height of the proposed project, diminution in the peaceful residen[tial] character of the Cherry neighborhood, and a reduction in the value of [CCO's] real property if MAP is allowed to proceed as approved by the City Council. Accordingly, [CCO's] damages are distinct from the community at large.
 

 In comparing CCO's pleadings with the guidelines embraced by
 
 Wiesner,
 
 it is clear that CCO met the minimum pleading requirements of standing to survive a motion to dismiss in accordance with Rule 12(b)(6) of the North Carolina Rules of Civil Procedure in generally alleging special damages. However, the
 
 evidence
 
 submitted before the Superior Court is insufficient to
 
 show
 
 that CCO has or will suffer any individual harm as a result of the rezoning such that CCO is entitled to survive Charlotte's and MAP's motion for summary judgment.
 
 See Wiesner,
 
 ___ N.C. App. at ___,
 
 781 S.E.2d at 877
 
 (holding that the plaintiff must establish each element "with the manner and degree of evidence required at the
 
 successive
 
 stages of the litigation" (emphasis added)).
 

 In its brief, CCO submits that it proffered evidence of the specific harm it will suffer due to its proximity to the rezoned property. To support its contention, CCO refers this Court to the following record evidence of special harm: (1) the pleading quoted above;
 

 *473
 
 (2) page 167 of the record, wherein Dr. Bittle-Patton was speaking at the required public hearing before the City Council on the Rezoning Petition; (3) pages 98-100 of the transcript, which record CCO's argument at the summary judgment hearing pertaining the issue of standing; and (4) exhibits 5, 16, 32, and 40. However, a close inspection of these materials reveals that they are utterly devoid of any actual proof of special damages. We address each in turn.
 

 First, although relevant to surviving a motion to dismiss, CCO's pleading does not evince that a harm will result from the rezoning.
 
 See
 
 N.C. R. Civ. P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth
 
 specific facts
 
 showing that there is a genuine issue for trial." (emphasis added))
 

 Furthermore, to the extent that CCO asserts in its complaint that it will suffer a reduction in the value of the property, which would be adequate to establish standing according to
 
 Jackson v. Guilford County Board of Adjustment,
 
 it has failed to provide the trial court or this Court with any evidence in support of that assertion. In fact, Dr. Sylvia Bittle-Patton, designated CCO's 30(b)(6) representative, testified during her deposition that "I don't say we would lose tenants because of the [MAP Project] because people need affordable housing. And that's scarce in the city." Therefore, by CCO's own admission, it would not lose any tenants as a result of the MAP Project. Accordingly, we cannot conclude CCO has standing on this basis.
 

 Second, Dr. Bittle-Patton's criticisms at the public hearing prior to Charlotte's meetings were limited to concerns about the height of the proposed building - then a projected 119 feet - as it surpassed the 100 foot height allowed by the PED overlay. That concern was rectified by lowering the proposed height of the building to a compliant 100 feet. Dr. Bittle-Patton at no point alleged that the rezoning risked increased noise, traffic, or parking. Therefore, Dr. Bittle-Patton's comments are not evidence of any special harm that CCO stands to suffer from the rezoning.
 

 Third, in regard to its oral argument before the trial court, CCO specifically stated:
 

 Our folks have a piece of property that they own that is right next to the subdivision. So I think that they have satisfied the requirements of being an aggrieved party, an affected party that has standing to bring this claim. So I think that for those reasons that we've got the standing that we need to be here.
 

 This assertion is also insufficient to prove that harm will ensue from rezoning because, as we already explained, owning property immediately adjacent to or in the vicinity of the subject property is inadequate in and of itself to establish special damages and, in turn, standing.
 

 Finally, in terms of CCO's documentary exhibits, CCO failed to provide this Court with exhibit 32 or 40, which it submits as proof that it will suffer special damages from the rezoning. Therefore, we cannot evaluate whether these exhibits are an adequate basis for concluding that special harm will result to CCO from the rezoning.
 
 See Tucker v. City of Kannapolis,
 

 159 N.C. App. 174
 
 , 176,
 
 582 S.E.2d 697
 
 , 698 (2003) ("As appellant[ ], plaintiff[ ] bore the burden of ensuring that all necessary information was included in the record on appeal as required by Rule 9.")
 
 [4]
 

 As for exhibits 5 and 16, on which CCO also relies, those exhibits fail to prove harm. Exhibit 5 is the "Minutes of Special Meeting of The Cherry Community Organization" from 4 August 2005. The page and a half of minutes lists the individuals who were present, notes the appointment of a chairman and secretary, records the reading of the Notice of Special Meeting, remarks that the purpose of the meeting was to vote on a proposal to sell certain parcels of land and to finance the sales price, observes that the motion on that business was unanimously approved, directs Vice-President Virginia Bynum to sign the documents necessary to complete the transaction,
 
 *474
 
 and documents that CCO accepts and intends to draft a managerial contract with the purchasing developer. Nothing in Exhibit 5, therefore, speaks to or demonstrates that CCO will suffer special damages from rezoning.
 

 Exhibit 16 is the minutes from the 28 September 2015 meeting at which Charlotte reconvened to consider the Rezoning Petition after MAP lowered the proposed height of the building from 119 to 106 feet. Among other things, those minutes include one Councilmember's objection to the Petition on the basis that certain aspects of the proposal were inconsistent with PED overlay. However, this Court has once again been unable to find anything in those minutes that serves as evidence sufficient to survive summary judgment that CCO will suffer special damages from rezoning.
 

 Simply stated, CCO's forecast of evidence of special damages consists of nothing more than conclusory, unsupported allegations that certain damages will ensue coupled with evidence that, at one point, the proposed development plan included a building that was taller than that which is permitted in the area. The latter point was rendered moot prior to CCO filing its complaint by MAP's decision to lower the height of its development to a compliant 100 feet.
 

 Therefore, CCO has failed to point us to any record evidence to meet its burden of production at summary judgment that CCO will suffer special damages distinct from the rest of the community by rezoning, nor can we find any. Accordingly, we conclude that CCO has failed to establish it has standing to maintain its action for declaratory judgment.
 

 We do not reach CCO's remaining contentions as it has not shown it has standing to raise them.
 
 See, e.g., Bigger v. Arnold,
 

 221 N.C. App. 662
 
 , 665,
 
 728 S.E.2d 437
 
 , 439 (2012) ("Plaintiff lacks standing to appeal because he is not a party aggrieved by the trial court's order. Accordingly, we do not reach the other issues in the case.");
 
 Estate of Apple ex rel. Apple v. Commercial Courier Exp., Inc.,
 

 168 N.C. App. 175
 
 , 181,
 
 607 S.E.2d 14
 
 , 18 (2005) ("Finally, as we have concluded plaintiff does not have standing to contest the compromise and settlement agreement between defendants and the medical provider, we do not reach the issue of whether the Commission had to approve the settlement agreement under the facts of this case.");
 
 Matter of Ezzell,
 

 113 N.C. App. 388
 
 , 392,
 
 438 S.E.2d 482
 
 , 484 (1994) ("Although Ezzell's argument may have merit, we do not reach the issue he attempts to raise because he does not have standing to raise the issue.");
 
 Boone v. Boone,
 

 27 N.C. App. 153
 
 , 154,
 
 218 S.E.2d 221
 
 , 222-23 (1975) ("We do not reach the questions raised by the assignments of error for the reason that defendant has no standing to raise the questions.") Therefore, we decline to reach the merits of CCO's appeal, and we dismiss this appeal for lack of subject matter jurisdiction.
 

 Conclusion
 

 For the foregoing reasons, we conclude that CCO lacks standing to prosecute its action for declaratory judgment. Accordingly, we modify and affirm the trial court's dismissal of CCO's claims.
 

 MODIFIED AND AFFIRMED.
 

 Judge HUNTER, JR concurs in a separate opinion.
 

 Judge DAVIS concurs in the result only.
 

 Robert N. HUNTER, JR.
 
 , concurring in a separate opinion.
 

 I write separately to concur in the result only.
 

 Generally, the North Carolina Constitution grants standing to anyone who suffers harm. "All courts shall be open; [and] every person for an injury done him in his lands, goods, person, or reputation shall have remedy by due course of law...."
 
 Mangum v. Raleigh Bd. of Adjust.,
 

 362 N.C. 640
 
 , 642,
 
 669 S.E.2d 279
 
 , 281-82 (2008) (quoting N.C. Const. art. I, § 18).
 

 The rationale of [the standing rule] is that only one with a genuine grievance, one personally injured by a statute, can be trusted to battle the issue. The gist of the question of standing is whether the party seeking relief has alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which
 
 *475
 
 sharpens the presentation[s] of issues upon which the court so largely depends for illumination of difficult constitutional questions.
 

 Id.
 
 at 642,
 
 669 S.E.2d at 282
 
 (quoting
 
 Stanley v. Dep't of Conservation & Dev.,
 

 284 N.C. 15
 
 , 28,
 
 199 S.E.2d 641
 
 , 650 (1973)) (internal quotation marks omitted). "[S]tanding relates not to the power of the court but to the right of the party to have the court adjudicate a particular dispute."
 
 Cherry v. Wiesner,
 
 ___ N.C. App. ___, ___,
 
 781 S.E.2d 871
 
 , 876 (2016). "It is not necessary that a party demonstrate that injury has already occurred, but a showing of `immediate or threatened injury' will suffice for purposes of standing."
 
 Mangum
 
 at 642-43,
 
 669 S.E.2d at 282
 
 (quoting
 
 River Birch Assocs. v. City of Raleigh,
 

 326 N.C. 100
 
 , 129,
 
 388 S.E.2d 538
 
 , 555 (1990)).
 

 Here, the CCO filed an action seeking a "declaration pursuant to Rule 57 of the North Carolina Rules of Civil Procedure and the North Carolina Declaratory Judgment Act,
 
 N.C. Gen. Stat. § 1-253
 
 ,
 
 et seq.,
 
 that the rezoning effectuated through the granting of the Rezoning Petition is invalid and unenforceable as an arbitrary and capricious act." The CCO also contends it has standing to bring this action pursuant to N.C. Gen. Stat. § 160A-393.
 

 N.C. Gen. Stat. § 160A-393 (2016) provides:
 

 (d)
 
 Standing.
 
 - A petition may be filed under this section only by a petitioner who has standing to challenge the decision being appealed. The following persons shall have standing to file a petition under this section:
 

 . . . .
 

 (2) Any other person who will suffer special damages as the result of the decision being appealed.
 

 It is necessary for a party to include allegations demonstrating why that party has standing in a particular case:
 

 Since the elements of standing are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.
 

 Weisner
 
 at ___,
 
 781 S.E.2d 871
 
 , 877 (quoting
 
 Neuse River Found., Inc. v. Smithfield Foods, Inc.,
 

 155 N.C. App. 110
 
 , 113,
 
 574 S.E.2d 48
 
 , 51 (2002)).
 

 The CCO alleged:
 

 Petitioner is an aggrieved party who owns real property immediately adjacent to, or in close proximity to the subject property, and will suffer special damages in the form of increased noise, traffic and parking, decreased visibility due to the height of the proposed buildings, diminution in the peaceful residential character of the Cherry neighborhood, and a reduction in the value of Petitioner's real property if MAP is allowed to proceed as approved by the City Council. Accordingly, Petitioner's damages are distinct from the community at large.
 

 Here, the CCO has alleged sufficient facts to assert standing to challenge the zoning amendment because it owns property immediately adjacent to the rezoned property and can potentially be adversely affected by the zoning amendment.
 

 However, the CCO lost the summary judgment hearing because it failed to forecast competent evidence sufficient to support special damages, not because the CCO does not meet the status of an aggrieved party under the standing doctrine. This is clearly a justiciable issue capable of resolution by our Courts, and the CCO, in my opinion has only lost at the summary judgment level because of its failure to forecast evidence tending to show specifically how it will suffer harm by the Defendants in this case. Uncontroverted opinion is no longer sufficient evidence in North Carolina.
 
 United Community Bank (Georgia) v. Wolfe,
 
 ___ N.C. ___, ___,
 
 799 S.E.2d 269
 
 , 272 (2017).
 

 Furthermore, under
 
 N.C. Gen. Stat. § 1-257
 
 (2016), a trial court may "refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the
 
 *476
 
 proceeding[.]"
 
 See Farber v. N.C. Psychology Bd.,
 

 153 N.C. App. 1
 
 ,
 
 569 S.E.2d 287
 
 ,
 
 cert. denied,
 

 356 N.C. 612
 
 ,
 
 574 S.E.2d 679
 
 (2002) (holding the trial court did not abuse its discretion in refusing to issue a declaratory judgment regarding the constitutionality of G.S. § 90-270.15(a)(10) where it decided further grounds for relief were unnecessary and would serve no useful purpose). Here, the trial court found "the City complied with all the law, with the Ordinances, their own law, the State law ... and with the City Council's own procedures." The trial court further reasoned "I don't see how a different result could possibly have taken place had the thing gone back to the Planning Board and an additional 30 days been given."
 

 From these facts I conclude the trial court did not abuse its discretion in this case.
 

 Previously, three of the parcels were owned by StoneHunt. MAP and StoneHunt, LLC entered into a Joint Venture Agreement to develop their adjacent properties in a mixed-use development, with MAP holding a majority interest in the Joint Venture. Charlotte and MAP's brief notes that, since that time, "StoneHunt, LLC conveyed its three parcels to [MAP] on February 6, 2017 and MAP is authorized to pursue the development of the [Parcels]."
 

 CCO owns one property across from the MAP Project. The area of the MAP Project immediately across from that property is designated for eight townhomes.
 

 Charlotte and MAP also argue on appeal that CCO failed to properly elect its Board of Directors in accordance with its bylaws and therefore the Board of Directors could not have properly authorized this litigation. We need not reach this contention, however, as we resolve this issue on the basis of insufficient evidence of special damages.
 

 We note that CCO never requested that this Court allow it to supplement the record on appeal so as to include these or any other materials.