CAROLINA BUILDERS CORPORATION v. AAA DRY WALL, INC.; DWC CON-
TRACTORS, INC.; AND THE HOUSING AUTHORITY OF THE CITY OF
RALEIGH

No. 7910SC115

(Filed 6 November 1979)

1. **Contracts § 14.2— contract requiring bonds—plaintiff as incidental
   beneficiary—no recovery under contract**

   In an action to recover the cost of building materials from a subcontractor
   where plaintiff alleged that a contract between defendant housing authority
   and defendant general contractor required the general contractor to guarantee
   the faithful performance of its contract with the housing authority by first ob-
   taining from each of its subcontractors a performance bond and labor and
   materials payment bond covering its work on the project, plaintiff was not en-
   titled to recover from the housing authority or the general contractor for their
   breach in failing to require defendant subcontractor to obtain a payment bond
   since plaintiff was a mere incidental beneficiary and not a third party
   beneficiary of defendants' contract.

2. **Principal and Surety § 9.1— public housing authority—failure to take
   bond—material supplier's remedy**

   No civil liability attaches to either a municipal corporation or its officers
   for failure to provide a labor and material payment bond; therefore only by
   way of indictment of the officials of defendant housing authority whose respon-
   sibility it was to follow the statutory mandate could an action predicated on
   G.S. 44-14 be maintained, and consequently plaintiff failed to state a claim for
   relief in its action against defendant housing authority and defendant general
   contractor alleging that it was entitled to recover directly from them by virtue
   of the statute.

APPEAL by plaintiff from *Godwin, Judge.* Judgment entered
9 October 1978 in Superior Court, WAKE County. Heard in the
Court of Appeals on 27 September 1979.

This suit involves the alleged failure of a subcontractor to
pay its material supplier. In its complaint plaintiff, a building sup-
ply company, claimed that it "opened an account" on 1 August
1974 with the defendant AAA Drywall, Inc. (AAA), whereby
plaintiff was to sell sheetrock to AAA to be used in a "low-rent
public housing project" for which AAA had subcontracted to
erect the "dry wall" (or sheetrock) for the general contractor,
defendant DWC Contractors, Inc., (DWC). The account provided
that plaintiff would sell the building materials on credit and bill
AAA at the end of each month. AAA agreed to pay the bill

within ten days "to earn a discount" or at least within thirty days to avoid carrying charges. Plaintiff alleged that it agreed to these terms "upon assurances given by an officer and agent of AAA that . . . this project was a 'bonded job' . . . ." Accordingly, plaintiff supplied sheetrock and, prior to 12 December 1974, was paid by AAA for all materials supplied. However, "[f]rom that date through February 25, 1975, [plaintiff] sold building materials for use on said project having a price of $7309.30 without receiving any payments. . . . " Carrying charges on that sum, contends plaintiff, have brought the total amount due it to $8,601.48 as of 1 January 1976.

Upon repeated requests to AAA to pay the account and AAA's continuing failure to do so, plaintiff "notified . . . DWC, and the defendant, Housing Authority, [of the City of Raleigh] to have said account balance paid by their bonding companies. . . ." It was plaintiff's understanding, and plaintiff so alleged, that the defendant Housing Authority, having acquired through the power of eminent domain certain real property within the City of Raleigh, entered into a contract with the defendant DWC to construct 80 low-rent housing units for which plaintiff was providing the sheetrock. The Housing Authority would own and lease the units, but, in order to get them built, it conveyed the land to DWC under a "Turnkey Contract" whose terms provided that DWC would build the units according to plans and specifications prepared by the Housing Authority, and that, upon completing the units, DWC would reconvey the tract to the Authority. Plaintiff alleged that it "is informed and believes that the Turnkey Contract . . . required DWC to guarantee the faithful performance of its contract with Housing Authority by first obtaining from each of its subcontractors a Performance Bond and Labor and Material Payment Bond covering its work on said project." Moreover, the contract entered into between DWC and AAA stipulated that "AAA would provide DWC with a . . . Labor and Material Payment Bond guaranteeing that all materials and building supplies delivered to said subcontractor . . . would be paid in full . . . ." Yet, when plaintiff notified these defendants of AAA's failure to pay for materials supplied it, they informed plaintiff "for the first time that there had been no such bond written for this project, and that [plaintiff] would have to look solely to AAA for payment."

Plaintiff asserted as a first cause of action that it was a "third party beneficiary" of the contract between DWC and the Housing Authority; that it was entitled to rely on that contract's provisions requiring payment bonds when it sold building materials on credit to AAA; and that both DWC and the Housing Authority were liable on its claim for their respective breaches in failing to enforce the contractual provisions. Alternatively, and as a second cause of action, plaintiff claimed that the Housing Authority, in neglecting to require DWC to provide a labor and material payment bond, thereby violated the statutory mandates of then-controlling G.S. § 44-14, and was thus rendered civilly liable for plaintiff's losses.

Although plaintiff names AAA as a defendant in this suit, the record does not disclose what, if anything, has transpired as to that defendant since the action was commenced. Both DWC and the Housing Authority, however, filed answers, contending that plaintiff had failed, with respect to both causes of action, to state a claim for which relief could be granted. The trial judge agreed and, on 9 October 1978 entered orders dismissing both claims for relief as set out in the complaint. From judgment entered thereon, plaintiff appealed.

*Joslin, Culbertson, Sedberry & Houck, by William Joslin, for plaintiff appellant.*

*Nance, Collier, Singleton, Kirkman & Herndon, by Rudolph G. Singleton, Jr., for defendant appellee DWC Contractors, Inc.*

*Allen, Steed & Allen, by Thomas W. Steed, Jr., for defendant appellee Housing Authority of the City of Raleigh.*

HEDRICK, Judge.

Plaintiff assigns as error the order dismissing, pursuant to Rule 12(b)(6), G.S. § 1A-1, both its claims for relief. The sufficiency of a claim to withstand a motion to dismiss is tested by its success or failure in setting out a state of facts which, when liberally considered, would entitle plaintiff to some relief. If it appears to a certainty that no state of facts which could be proved in support of the claim would so entitle plaintiff, the complaint should be dismissed. 2A Moore's Federal Practice § 12.08 (1979). *Accord, Sutton v. Duke,* 277 N.C. 94, 176 S.E. 2d 161 (1970); *see also Kelly*

*v. Briles*, 35 N.C. App. 714, 242 S.E. 2d 883 (1978). Reviewing the instant case in light of this standard, we find, for the following reasons, that the plaintiff has failed to demonstrate any conceivable factual basis to support either of its claims and, therefore, the complaint was properly dismissed.

[1] Plaintiff has argued, first, that it was a "third-party beneficiary" of the "Turnkey" contract between the Housing Authority and DWC, and, as such, that it is entitled to recover from both these parties for their breach in failing to require AAA to obtain a payment bond. Relying upon the New York case of *Strong v. American Fence Construction Co.*, 245 N.Y. 48, 156 N.E. 92 (1927), plaintiff bases this argument upon its conviction that the bond requirement was written into this contract for the direct benefit of this plaintiff. Although we find plaintiff's position persuasive, we must reject its argument since we are convinced, to the contrary, that plaintiff was a "mere incidental beneficiary" of the contract between the Housing Authority and DWC. 3 Strong's N.C. Index 3d, *Contracts* § 14 (1976).

The primary premise behind third-party beneficiary law is simply stated: if two parties enter into a contract *with the intention*, express or implied, of benefitting a third party, such party may maintain an action to enforce the contract, and may recover for its breach, even though the third party is not a party to the contract. Strong's N.C. Index, *supra; see also* 4 Corbin, *Contracts* § 774 (1951). Application of the principle, however, is not so simple. Thus, to aid analysis of a given factual situation, these third parties have been described as being either donee or creditor beneficiaries, and, "it is possible to say that the only third parties who have legal rights are the donees and the creditors of the promisee." Corbin, *supra* at § 779C. *Accord, Vogel v. Reed Supply Co.*, 277 N.C. 119, 177 S.E. 2d 273 (1970). Little, if any, discussion is merited in pointing out that plaintiff could not prevail as a "donee" beneficiary since, in order to so qualify, the promisee (here the Housing Authority) must express an intention and purpose "to confer a benefit upon [the third party] as a *gift* in the shape of the promised performance." Corbin, *supra* at § 774. [Emphasis added.] Even plaintiff does not contend that such was the case here.

On the other hand, for plaintiff to qualify as a "creditor" beneficiary, it must appear that the promisee has contemplated

"the present or future existence of a duty or liability to a third party and [has entered] into the contract with the expressed intent that the performance contracted for is to satisfy and discharge that duty or liability. . . ." Corbin, *supra* at § 787. Without doubt, had a bond been obtained in the case at bar, plaintiff would have been a creditor beneficiary of the promise given by the surety to the general contractor (promisee), DWC, and would have been entitled to maintain an action against and recover from the surety (promisor). *Id.* at §§ 798-803; 10 Strong's N.C. Index 3d, *Principal and Surety*, §§ 9, 9.1 (1977); *RGK, Inc. v. United States Fidelity & Guaranty Co.*, 292 N.C. 668, 235 S.E. 2d 234 (1977). A different question is presented, however, when the "promise" alleged to ensure such a result is merely a bald contractual provision that such a surety undertaking be secured. In other words, the performance of the contract between the Housing Authority and DWC was to be rendered exclusively in fulfillment of DWC's obligations to the Housing Authority. Moreover, DWC's performance could take place in full without plaintiff's receiving any benefit whatsoever. *See* Corbin, *supra* at § 779D. Nothing in the record before us suggests that the promisee-Housing Authority exacted from DWC the promise to obtain bonds with the expressed intent to directly benefit third parties such as plaintiff. Contrarily, any benefit derived therefrom would necessarily accrue indirectly, that is, through the subsequent undertaking of the general contractor when it either purchased bonds itself from a surety or contracted with its subcontractors to do so. We hold that the plaintiff herein was a mere incidental beneficiary of the contract at issue and, therefore, could not recover for its breach. Thus, the trial court properly dismissed plaintiff's claim predicated on this theory.

[2] By way of a second claim for relief, plaintiff argues that it is entitled to recover directly from both the Housing Authority and DWC by virtue of former G.S. § 44-14 (repealed by N.C. Session Laws, c. 1194, s. 6, 1973, effective 1 September 1974) which provided materially as follows:

> Every county, city, town or other municipal corporation which lets a contract for the building, repairing or altering any building, public road, or street, shall require the contractor for such work . . . to execute bond with one or more solvent sureties before beginning any work under said con-

tract, payable to said county, city, town or other municipal corporation, and conditioned for the payment of all labor done on and material and supplies furnished for the said work under a contract or agreement made directly with the principal contractor or subcontractor. . . . If the official of the said county, city, town or other municipal corporation, whose duty it is to take said bond, fails to require the said bond herein provided to be given, he is guilty of a misdemeanor. . . .

Since laborers and material furnishers can acquire no liens on public construction projects, *Griffin Manufacturing Co. v. Bray*, 193 N.C. 350, 137 S.E. 151 (1927); *Robinson Manufacturing Co. v. Blaylock*, 192 N.C. 407, 135 S.E. 136 (1926), the purpose of the statute was to give such laborers and materialmen "a substantial equivalent to the lien given laborers and materialmen engaged in private construction. The surety on the bond [was], for practical purposes, the substitute for the lien." *American Bridge Division United States Steel Corp. v. Brinkley*, 255 N.C. 162, 164, 120 S.E. 2d 529, 531 (1961). Plaintiff advances an appealing argument that, because the statute's intended purpose was to protect laborers and material suppliers on public works projects, *Owsley v. Henderson*, 228 N.C. 224, 45 S.E. 2d 263 (1947), then "our courts *should* permit recovery by a material supplier injured" when the municipal corporation violates the statute by failing to enforce the contractor to obtain the requisite bonds. [Our emphasis.] However attractive the argument, we feel bound by the decisions of our Supreme Court holding that no civil liability attaches to either the municipal corporation or its officers for their failure to take the bond. *Noland Co. v. Board of Trustees of Southern Pines School*, 190 N.C. 250, 129 S.E. 577 (1925); *Warner v. Halyburton*, 187 N.C. 414, 121 S.E. 756 (1924). The sole remedy is prescribed by the statute itself: "If the official . . . whose duty it is to take said bond, fails to require the said bond herein provided to be given, he is guilty of a misdemeanor." Thus, only by way of indictment of the officials of the Housing Authority whose responsibility it was to follow the statutory mandate may an action predicated on G.S. § 44-14 be maintained. *Warner v. Halyburton, supra.* Although we must agree with plaintiff's assertion that the remedy thereby afforded "would accomplish nothing toward compensating an unpaid materialman on an unbonded job", we must

hold that plaintiff failed to state a claim for relief in its second cause of action. Furthermore, we point out that plaintiff was obligated to protect itself by determining, in advance of opening an account with AAA, whether the required bonds had, in fact, been given. *See Noland Co. v. Board of Trustees of Southern Pines School, supra.* All plaintiff had to do to avoid its present predicament was to demand to see the bond upon which it alleges it relied.

We hold that the trial court correctly dismissed the plaintiff's claims against the Housing Authority and DWC.

Affirmed.

Judges CLARK and MARTIN (Harry C.) concur.