RAYMOND J. HENRY v. NORTH CAROLINA DEPARTMENT OF TRANSPOR-
TATION AND BILLY ROSE, STATE OF NORTH CAROLINA HIGHWAY
ADMINISTRATOR

No. 7927SC259

(Filed 4 December 1979)

**Eminent Domain § 5— person displaced by public works project—relocation assist-
ance—computation of amount—discretionary matter**

G.S. Chapter 133, which provides assistance for persons displaced as a
result of public works programs, commits the matter of relocation assistance
payments absolutely and solely to the discretion of the officials of the agency
involved; therefore plaintiff service station operator, who was displaced by the
taking of his property by the Department of Transportation, was not entitled
to any method of calculation of payments other than that determined by the
agency officials involved, nor was plaintiff entitled to judicial review of the
decision of the Department of Transportation.

APPEAL by plaintiff from *Burroughs, Judge.* Judgment
entered 28 February 1979 in Superior Court, GASTON County.
Heard in the Court of Appeals on 13 November 1979.

Plaintiff herein operated a Shell service station in Charlotte,
North Carolina, under a "dealer's lease contract" with Shell Oil
Company which was to continue through 30 September 1978. On 5
July 1977 Shell notified plaintiff that his lease would be ter-
minated, effective 29 August 1977, because the North Carolina
Department of Transportation was acting pursuant to its power
of eminent domain to acquire the property on which plaintiff's sta-
tion was located. Thus, plaintiff "was forced to move his business
and to relocate" approximately one-quarter of a mile away.
Thereafter, the Department determined the amount of relocation
assistance money it would pay plaintiff under G.S. § 133-8 by con-
sidering his income for the two years immediately preceding its
acquisition of the property. Plaintiff brought suit, charging that
the defendant Department "failed to exercise reasonable, fair and
equitable judgment" in so calculating his damages. He contended:

7. . . . That plaintiff asked the Court to take judicial notice of the fact that the two calendar years immediately preceding the . . . condemnation, the entire United States suffered under its first ever oil embargo and gasoline shortage. That one of the hardest hit industries during these two years was the personally owned service stations. That the personal income to the operators of said service stations during the years of 1975 and 1976 was substantially distorted due to the oil embargo and its increase in the price of all petroleum products. . . .

8. Plaintiff respectfully contends . . . that due to the unusual nature of his business and the world oil situation that occurred in the two years immediately preceding this acquisition, it would be more equitable to use the third year immediately prior to the acquisition since that was before the oil embargo and its singularly devastating effect upon certain businesses.

Defendant moved to dismiss the action pursuant to Rule 12(b), G.S. § 1A-1, contending that the court lacked subject matter jurisdiction since the State had not consented to be sued, and that, in any event, plaintiff had failed to state a claim for which relief was available. On 28 February 1979, the court allowed the motion, concluding that the statute under which plaintiff claimed "does not create any right enforceable in any court and the determination of the defendants . . . is conclusive and not subject to judicial review." Plaintiff appealed.

*Whitesides and Robinson, by Henry M. Whitesides, for plaintiff appellant.*

*Attorney General Edmisten, by Special Deputy Attorney General James B. Richmond, for defendant appellee.*

HEDRICK, Judge.

Plaintiff brings his case to this Court seeking a reversal of the trial judge's determination that Chapter 133 of the North Carolina General Statutes does not provide for judicial review, and that the decision of the Department of Transportation acting thereunder is, thus, final. He cites no authority to support his position. He merely argues that he "should have a right" to judicial review.

The statute at issue in this case, "The Uniform Relocation Assistance and Real Property Acquisition Policies Act," declares its purpose to be the establishment of "a uniform policy for the fair and equitable treatment of persons displaced as a result of public works programs. . . ." G.S. § 133-6. In carrying out that goal, the agency involved is empowered to reimburse "displaced" persons, *in its discretion*, as follows:

> § 133-8. *Moving and related expenses.* — (a) Whenever the acquisition of real property for a program or project undertaken by an agency will result in the displacement of any person, such agency *may* make a payment to any displaced person, upon application *as approved by the head of the agency* . . . [Emphasis added.]

Subsection (a) goes on to list what expenses *may* be reimbursed. Subsections (b) and (c), on the other hand, provide for payments in lieu of those authorized by subsection (a), if the displaced person is eligible under (a). Plaintiff herein elected to proceed under subsection (c) which sets up, in pertinent part, the following payment scheme:

> (c) Any displaced person eligible for payments . . . *may* receive a fixed payment in an amount equal to the average annual net earnings of the business. . . . For purposes of this subsection, the term "average annual net earnings" means one half of any net earnings of the business . . . , before federal, State, and local income taxes, during the two taxable years immediately preceding the taxable year in which such business . . . moves from the real property acquired for such project, or during such other period as the head of such agency determines to be more equitable for establishing such earnings, ., . . [Emphasis added.]

Quite plainly, these sections commit the matter of relocation assistance payments absolutely and solely to the discretion of the officials of the agency involved. The use of the auxiliary verb "may" connotes "permission, possibility, probability or contingency", Black's Law Dictionary 1131 (rev. 4th ed. 1968), and, "[o]rdinarily, when a statute employs the word 'may,' its provisions will be construed as permissive and not mandatory." 12

Strong's N.C. Index 3d, *Statutes* § 5.3, at p. 68 (1978). We are of the opinion that § 133-8 confers no right either to receive such payments or to demand that the amount of payments, if granted, be calculated other than as the agency officials determine.

We are bolstered in our construction of § 133-8 by § 133-17, which unambiguously declares:

> *Administrative payments.* —. . . Nothing contained in this Article shall be construed as creating any right enforceable in any court and the determination of the agency under the procedure provided for in G.S. 133-14 shall be conclusive and not subject to judicial review.

Section 133-14 authorizes the agency to adopt rules and regulations, including "[p]rocedure for an aggrieved displaced person to have his determination of eligibility or amount of payment *reviewed by the agency head or its administrative officer. . . .*" (Our emphasis.) The legislative intent is repeatedly made manifest by such clear and unequivocal language, and the courts must heed the plain and definite meaning contained therein. *Norris v. Home Security Life Insurance Co.*, 42 N.C. App. 719, 257 S.E. 2d 647 (1979); Strong's *supra* at § 5.5. *See also Merge v. Troussi*, 394 F. 2d 79 (3d Cir. 1968).

We hold that Chapter 133 creates neither right nor remedy pursuant to which plaintiff can press a claim against defendant. The statute bestows no more than a gift. The judge properly allowed defendant's motion to dismiss on Rule 12(b)(6) grounds, *see Carolina Builders Corp. v. AAA Dry Wall, Inc.*, 43 N.C. App. 444, 259 S.E. 2d 364 (1979), and authorities therein cited, and the judgment entered 28 February 1979 is accordingly

Affirmed.

Judges MARTIN (Robert M.) and WELLS concur.