ARROWOOD, Judge.
 

 *616
 
 The North Carolina Reinsurance Facility ("petitioner" or "the Facility") appeals from
 
 *851
 
 the superior court's order denying petitioner's petition for review and affirming an order of the North Carolina Commissioner of Insurance ("the Commissioner") that reversed petitioner's denial of a reimbursement to Allstate Indemnity Company ("respondent" or "Allstate"). For the reasons that follow, we reverse and remand.
 

 I.
 
 Background
 

 On 25 October 2007, Allstate issued an automobile insurance policy to Mr. Jason T. Crouse ("Mr. Crouse") that was ceded to the Facility, "a nonprofit unincorporated legal entity ... consisting of all insurers licensed to write and engaged in writing within this State motor vehicle insurance or any component thereof[,]"
 
 N.C. Gen. Stat. § 58-37-5
 
 (2017), "which insures drivers who the insurers determine they do not want to individually insure."
 
 Discovery Ins. Co. v. N.C. Dep't of Ins.
 
 , --- N.C.App. ----, ----,
 
 807 S.E.2d 582
 
 , 585 (2017) (citation and internal quotation marks omitted).
 

 Mr. Crouse purchased this policy through Allstate agent Ms. Jeannie Scott ("Ms. Scott") in North Carolina. Less than a month later, on 2 November 2007, Mr. Crouse was involved in an automobile accident in Clearwater, Florida. Mr. Crouse's vehicle collided with a bicycle operated by a minor, Mr. Matthew R. Hanna ("Mr. Hanna"). Mr. Hanna suffered traumatic brain damage and other serious injuries.
 

 Mr. Crouse reported the accident to Ms. Scott on 5 November 2007. She informed him that he had to call a 1-800-Allstate telephone number to report the loss. However, there is no indication in the record that Mr. Crouse ever called the 1-800-Allstate telephone number, nor that Allstate received any additional notice of the claim until after Mr. Hanna's parents had hired counsel. The Hannas filed a complaint against Mr. Crouse in Florida state court on 15 January 2008, seeking damages from the accident.
 

 On 18 January 2008, a paralegal in the law office representing the Hannas called the 1-800-Allstate telephone number to report the claim,
 
 *617
 
 but did not notify Allstate that legal action had commenced against Mr. Crouse. Allstate opened a claim file and began investigating the claim that same day. The adjuster assigned to the case interviewed Mr. Crouse, hired counsel to represent him, and created an accident reconstruction. Within five days, Allstate authorized the tender of the policy limit of $ 50,000.00 to the Hannas on 23 January 2008. Allstate formally tendered this offer on 1 February 2008. The Hannas rejected this offer on 14 February 2008.
 

 Mr. Crouse entered into a stipulated settlement with the Hannas on 6 September 2012, whereby he consented to the entry of a $ 13,800,000.00 judgment against him and assigned his "claims, rights, and interests in the policy ... as against Allstate ... for any failure to settle or otherwise administer his automobile claims arising out of the Accident." As part of this settlement, the Hannas agreed not to take affirmative actions to record or execute the judgment against Mr. Crouse. The final judgment was entered on 7 September 2012.
 

 The Hannas filed a complaint against Allstate in the Middle District of Florida on 10 September 2012. The complaint alleged Allstate breached its duty of good faith to Mr. Crouse by failing to: (1) timely and reasonably affirmatively seek out a settlement of the claims in the Hanna matter; (2) communicate the exposure Mr. Crouse faced, and to offer advice on how to minimize this exposure; and (3) adopt and implement standards and procedures for timely and proactive investigation and resolutions of claims and/or failing to follow such standards Allstate had adopted. The matter went to trial, and the jury returned a verdict on 3 March 2014 that determined Allstate had acted in bad faith by failing to settle the claims arising out of the Hanna matter. The trial court entered a $ 13,800,000.00 judgment against Allstate on 4 February 2014. Allstate appealed the judgment, but eventually settled the matter on 29 September 2015 for $ 11,000,000.00.
 

 Allstate filed a petition for reimbursement with the Facility on 30 October 2015. The
 
 *852
 
 Facility's claims committee heard the matter on 1 February 2017. On 9 May 2017, the claims committee recommended the denial of Allstate's petition. Allstate objected to the claims committee's recommendation, and requested a hearing before the Facility's Board ("the Board"). The Board heard the matter, and denied the petition for reimbursement on 14 July 2017.
 

 Allstate appealed to the Commissioner pursuant to
 
 N.C. Gen. Stat. § 58-37-65
 
 (a) (2017). The matter came on for hearing before the Commissioner's designated hearing officer, Hearing Officer A. John
 
 *618
 
 Hoomani, Esq., on 30 October 2017. The Commissioner ordered the Board to reconsider its ruling because its denial of Allstate's petition was not in accordance with the Facility Act, the Facility's Plan of Operation, and the Facility's Standard Practice Manual.
 

 The Facility petitioned for judicial review of the Commissioner's order on 21 December 2017, and named both Allstate and the Commissioner as a respondent on appeal. The Commissioner moved to dismiss himself as a party.
 

 The matter came on for hearing before the Honorable R. Allen Baddour, Jr. on 31 July 2018 in Wake County Superior Court. The trial court granted the Commissioner's motion to dismiss, entered an order denying the Facility's petition for review, and affirmed the Commissioner's order.
 

 The Facility appeals.
 

 II.
 
 Discussion
 

 Petitioner argues the trial court erred by affirming the Commissioner's order because the Commissioner: (1) failed to apply paragraph C.2. of Section 5 of the Facility's Standard Practice Manual ("Rule 5.C.2.") according to its plain meaning; and (2) erroneously determined petitioner's grounds for the denial of Allstate's petition were not in accordance with the Facility Act, the Facility's Plan of Operation, and the Facility's Standard Practice Manual. We agree with petitioner that the superior court's affirming the Commissioner was error due to failure to apply Facility Rule 5.C.2. according to its plain meaning. Therefore, we reverse and remand, and do not reach the second issue on appeal.
 

 A.
 
 Standard of Review
 

 All of the Commissioner's rulings or orders made pursuant to
 
 N.C. Gen. Stat. § 58-37-65
 
 of the Facility Act are "subject to judicial review as approved in G.S. 58-2-75."
 
 N.C. Gen. Stat. § 58-37-65
 
 (f) (2017).
 
 N.C. Gen. Stat. § 58-2-75
 
 (2017) provides that, generally, "[a]ny order or decision made, issued or executed by the Commissioner" is "subject to review in the Superior Court of Wake County on petition by any person aggrieved filed within 30 days from the date of the delivery of a copy of the order or decision made by the Commissioner upon such person."
 
 N.C. Gen. Stat. § 58-2-75
 
 . "
 
 N.C. Gen. Stat. § 58-2-75
 
 is to be read in conjunction with N.C. Gen. Stat. § 150B-51 of the Administrative Procedure Act[.]"
 
 Discovery Ins. Co.
 
 , --- N.C.App. at ----,
 
 807 S.E.2d at
 
 587 (citing
 
 N.C. Reinsurance Facility v. Long
 
 ,
 
 98 N.C.App. 41
 
 , 46,
 
 390 S.E.2d 176
 
 , 179 (1990) ).
 

 *619
 
 N.C. Gen. Stat. § 150B-51(b) provides:
 

 The court reviewing a final decision may affirm the decision or remand the case for further proceedings. It may also reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the findings, inferences, conclusions, or decisions are:
 

 (1) In violation of constitutional provisions;
 

 (2) In excess of the statutory authority or jurisdiction of the agency or administrative law judge;
 

 (3) Made upon unlawful procedure;
 

 (4) Affected by other error of law;
 

 (5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or
 

 (6) Arbitrary, capricious, or an abuse of discretion.
 

 *853
 
 N.C. Gen. Stat. § 150B-51(b) (2017). Our Court reviews errors asserted "pursuant to subdivisions (1) through (4) of subsection (b) of this section ... using the de novo standard of review." N.C. Gen. Stat. § 150B-51(c). With regard to errors asserted "pursuant to subdivisions (5) and (6) of subsection (b) of this section, the court" reviews "the final decision using the whole record standard of review."
 

 Id.
 

 Under the whole record test, [the reviewing court] may not substitute its judgment for the agency's as between two conflicting views, even though it could reasonably have reached a different result had it reviewed the matter
 
 de novo
 
 . Rather, a court must examine all the record evidence-that which detracts from the agency's findings and conclusions as well as that which tends to support them-to determine whether there is substantial evidence to justify the agency's decision.
 

 Discovery Ins. Co.
 
 , --- N.C.App. at ----,
 
 807 S.E.2d at 587
 
 (quoting
 
 N.C. Dep't of Env't & Nat. Res. v. Carroll
 
 ,
 
 358 N.C. 649
 
 , 660,
 
 599 S.E.2d 888
 
 , 895 (2004) ) (internal quotation marks omitted) (alteration in original). "Substantial evidence means relevant evidence a reasonable mind might accept as adequate to support a conclusion." N.C. Gen. Stat. § 150B-2(8c) (2017) (internal quotation marks omitted).
 

 *620
 
 B.
 
 The Plain Meaning of Facility Rule 5.C.2.
 

 The Facility argues the superior court's judgment is erroneous because the Commissioner had committed an error of law by failing to apply Rule 5.C.2. of the Facility's Standard Practice Manual according to its plain meaning. Additionally, the Facility contends the judgment appealed from is erroneous because the Commissioner exceeded his statutory authority by committing this error of law.
 

 We review questions of law in cases appealed from administrative tribunals
 
 de novo
 
 . N.C. Gen. Stat. § 150B-51(c) ;
 
 Discovery Ins. Co.
 
 , --- N.C.App. at ----,
 
 807 S.E.2d at 587
 
 . "When the language of regulations is clear and unambiguous, there is no room for judicial construction, and courts must give the regulations their plain meaning."
 
 Britt v. N.C. Sheriffs' Educ. & Training Standards Comm'n
 
 ,
 
 348 N.C. 573
 
 , 576,
 
 501 S.E.2d 75
 
 , 77 (1998) (citation omitted).
 

 The Facility's Standard Practice Manual was established pursuant to
 
 N.C. Gen. Stat. § 58-37-35
 
 (g)(8), which provides:
 

 (g) Except as may be delegated specifically to others in the plan of operation or reserved to the members, power and responsibility for the establishment and operation of the Facility is vested in the Board of Governors, which power and responsibility include but is not limited to the following:
 

 ....
 

 (8) To establish fair and reasonable procedures for the sharing among members of any loss on Facility business that cannot be recouped under G.S. 58-37-40(e) and other costs, charges, expenses, liabilities, income, property and other assets of the Facility and for assessing or distributing to members their appropriate shares. ...
 

 N.C. Gen. Stat. § 58-37-35
 
 (g)(8) (2017). Section 5 of the Standard Practice Manual contains general information about a member company's responsibility regarding claims management. Subsection C of Section 5 addresses the procedure for presenting excess judgments or other legal actions against companies to the Facility, such as the excess judgment in the instant case.
 

 *621
 
 Rule 5.C.2. of this section provides, in pertinent part:
 

 The Governing Board shall consider the petition, and may at any time prior to judgment against the petitioner or thereafter authorize the Facility to contribute any part of sums required to satisfy the excess judgment against the insured or the judgment or potential judgment against the petitioner, unless it is the determination of
 
 *854
 
 the Board of Governors that the petitioner was guilty of gross or willful or wanton mishandling, in which event the petition shall be denied.
 

 N.C. Reinsurance Facility Standard Practice Manual 5-1, Rule 5.C.2. (2014).
 

 Here, the superior court affirmed the Commissioner holding that "the only reasonable interpretation of" this Rule, "when read in conjunction with the enabling legislation," "is that a petition for reimbursement will be approved by the Facility unless the member company has engaged in 'gross or willful or wanton mishandling' of the claim." Therefore, the superior court agreed with the Commissioner's reasoning that because the Facility and Commissioner had agreed and found Allstate was not guilty of gross or willful or wanton mishandling of the claim, Rule 5.C.2. required the Facility to reimburse Allstate for the $ 11,000,000.00 settlement.
 

 On appeal, petitioner contends the superior court's and the Commissioner's interpretation is contrary to the plain meaning of Rule 5.C.2. Specifically, petitioner argues under Rule 5.C.2., the Board has full discretionary authority to approve or deny Allstate's petition for reimbursement. We agree.
 

 The first clause of the disputed text provides: "The Governing Board
 
 shall
 
 consider the petition" for reimbursement. (Emphasis added). "It is well established that the word 'shall' is generally imperative or mandatory."
 
 Puckett v. Norandal USA, Inc.
 
 ,
 
 211 N.C.App. 565
 
 , 573,
 
 710 S.E.2d 356
 
 , 362 (2011) (citation and internal quotation marks omitted). Here, "shall" is an auxiliary verb to the main verb, "consider[.]" Therefore, this clause mandates that the Board must consider each petition for an excess judgment or other legal action against the member companies.
 

 After the first clause, there is a comma, and the conjunction "and" begins the second clause; thus, the second clause still refers to the action taken by the Board upon consideration of the petition. The second clause states: "and
 
 may
 
 at any time prior to judgment
 
 *622
 
 against the petitioner or thereafter
 
 authorize
 
 the Facility to contribute any part of sums required to satisfy the excess judgment against the insured or the judgment or potential judgment against the petitioner." (Emphasis added).
 

 Here, "may" is the auxiliary verb to the main verb, "authorize." "The use of the word 'may' has been interpreted by our Supreme Court to connote discretionary power, rather than an obligatory one."
 
 Wade v. Carolina Brush Mfg. Co.
 
 ,
 
 187 N.C.App. 245
 
 , 250-51,
 
 652 S.E.2d 713
 
 , 717 (2007) (citing
 
 Wise v. Harrington Grove Cmty. Ass'n,
 

 357 N.C. 396
 
 , 402-403,
 
 584 S.E.2d 731
 
 , 737 (2003) ;
 
 In re Hardy,
 

 294 N.C. 90
 
 , 97,
 
 240 S.E.2d 367
 
 , 372 (1978) ) (citation omitted). Because "may" is auxiliary to "authorize[,]" the plain language of this rule mandates that the Facility's power to "authorize the Facility to contribute any part of sums required to satisfy the excess judgment against the insured or the judgment or potential judgment against the petitioner" is discretionary and not mandatory.
 

 The phrase "to
 
 contribute any part of sums
 
 required to satisfy the ... judgment" clearly authorizes the Facility with the discretionary power to contribute any part of sums required to satisfy the excess judgment. (Emphasis added). "Contribute[,]" used as a transitive verb, means "to give or supply in common with others[.]" Merriam-Webster Dictionary (2014).
 

 Rule 5.C.2. explains that "
 
 any
 
 part of sums required to satisfy ... the judgment" may be contributed. (Emphasis added). "Any" is an adjective that describes "some, no matter how much or how little, how many, or what kind[.]"
 

 Id.
 

 These words read together plainly provide that the Facility has full discretion to authorize a full or partial contribution, or no contribution.
 

 After the second clause, there is a comma, followed by the final clause of the sentence: "
 
 unless
 
 it is the determination of the Board of Governors that the petitioner was guilty of gross or willful or wanton mishandling, in which event the petition
 
 shall
 
 be denied."
 

 *855
 
 (Emphasis added). The word "unless" signals that this clause contains an exception. The plain language of this clause states that this exception limits the Facility's discretion: the Facility "shall" deny the petition for reimbursement if the Board determines "the petitioner was guilty of gross or willful or wanton mishandling."
 

 In sum, the plain language reading of Rule 5.C.2. provides that, although the Board must consider all petitions for reimbursement, it has full discretionary authority to approve or deny these petitions, unless the Board determines "the petitioner was guilty of gross or willful or wanton mishandling." Because the parties stipulated and the Board did
 
 *623
 
 not find petitioner guilty of gross or willful or wanton mishandling, the Board had full discretionary authority to approve or deny Allstate's petition for reimbursement in whole or in part.
 

 Despite the plain language in Rule 5.C.2., respondent contends the General Assembly could not have intended for the Board to have such discretion because it would not intend for the Board to make arbitrary determinations without determining principles. The superior court's judgment affirming the Commissioner's order is based in part on this argument, and concludes that reading Rule 5.C.2. as granting the Board full discretionary authority over all petitions wherein the petitioner was not guilty of gross or willful or wanton mishandling of a claim would create arbitrary results because the Facility's discretion is "unfettered[.]" The respondent and the Commissioner relies on
 
 Sanchez v. Town of Beaufort
 
 ,
 
 211 N.C.App. 574
 
 ,
 
 710 S.E.2d 350
 
 (2011) to support this assertion, which "held that when an administrative body establishes certain requirements
 
 without the use of any determining principles
 
 from its guidelines, then the administrative body's decision is clearly arbitrary." (Emphasis in original).
 

 Sanchez
 
 involved a superior court order that affirmed a Board of Adjustment's decision to reverse a town's Historic Preservation Commission ("Historic Commission")'s decision to deny an application for a certificate of appropriateness.
 
 Sanchez
 
 , 211 N.C.App. at 575, 710 S.E.2d at 351. The Historic Commission denied the application because it determined "structure[s] on [the petitioner's] property over twenty-four feet in height would be incongruous with the historic district[.]"
 
 Id.
 
 at 580, 710 S.E.2d at 354 (footnote omitted). The Board of Adjustment held this requirement was arbitrary and capricious, and our Court agreed, explaining that the whole record did not contain substantial evidence to support the twenty-four feet height requirement because:
 

 While there was evidence presented before the [Historic Commission] that there were other one-and-one-half story structures in the historic district that ranged between twenty and twenty-two feet in height, there was also evidence presented that the residences closest to the [petitioner's] property ranged from twenty-six to thirty-five feet in height. N.C. Gen. Stat. § 160A-400.9 does not permit the [Historic Commission] to "cherry pick" certain properties located within the historic district in order to determine the congruity of proposed construction; instead, the [Historic Commission] must determine congruity
 
 *624
 
 contextually, based upon "the total physical environment of the Historic District."
 

 Id.
 
 at 580-81, 710 S.E.2d at 354-55 (citation omitted). The Court held: "An administrative ruling is deemed arbitrary and capricious when it is whimsical, willful, and an unreasonable action without consideration or in disregard of facts or law or without determining principle."
 
 Id.
 
 at 580, 710 S.E.2d at 354.
 

 In the respondent's view, the plain reading of Rule 5.C.2. as described by this Court, is contrary to
 
 Sanchez
 
 because it empowers the Facility with the discretion to make arbitrary decisions, in disregard of facts or law or without determining principle. However, the Facility Act and Rule 5.C.2. in the instant case is distinguishable from the ordinance in
 
 Sanchez
 
 in that it involves a remedial statutory scheme.
 
 See
 

 Discovery Ins. Co.
 
 , --- N.C.App. at ----,
 
 807 S.E.2d at 588
 
 ("The
 
 *856
 
 Facility Act is remedial in nature and is to be construed liberally" "in a manner which assures fulfillment of the beneficial goals for which it is enacted and which brings within it all cases fairly falling within its intended scope.") (citations and internal quotation marks omitted).
 

 Therefore, our Court's analysis in
 
 Henry v. N.C. Dep't of Transp.
 
 ,
 
 44 N.C.App. 170
 
 ,
 
 260 S.E.2d 438
 
 (1979), a case interpreting a remedial statute's grant of authority to an agency to reimburse expenses of persons displaced as a result of public works programs within its discretion, is instructive. The statute,
 
 N.C. Gen. Stat. § 133-8
 
 (a), provides: "Whenever the acquisition of real property for a program or project undertaken by an agency will result in the displacement of any person, such agency
 
 may
 
 make a payment to any displaced person, upon application as approved by the head of the agency ...."
 
 N.C. Gen. Stat. § 133-8
 
 (a) (1979) (emphasis added).
 
 [1]
 
 Our Court held:
 

 Quite plainly, [
 
 N.C. Gen. Stat. § 133-8
 
 ] commit[s] the matter of relocation assistance payments absolutely and solely to the discretion of the officials of the agency involved. The use of the auxiliary verb "may" connotes "permission, possibility, probability or contingency", and, "[o]rdinarily, when a statute employs the word 'may,' its provisions will
 
 *625
 
 be construed as permissive and not mandatory." We are of the opinion that [N.C. Gen. Stat.] § 133-8 confers no right either to receive such payments or to demand that the amount of payments, if granted, be calculated other than as the agency officials determine.
 

 Henry
 
 ,
 
 44 N.C.App. at 172-73
 
 ,
 
 260 S.E.2d at 440
 
 (citations omitted). Accordingly, our Court held the statute "creates neither right nor remedy pursuant to which plaintiff can press a claim against defendant. The statute bestows no more than a gift."
 
 Id.
 
 at 173,
 
 260 S.E.2d at 440
 
 . Thus, under the pre-amended statute, the agency had complete discretion, without determining principles.
 

 Similarly, here, we consider a remedial act that uses similar discretionary language, and provides that an agency "may" make a reimbursement. Additionally, Facility members do not have an automatic right of reimbursement for extra-contractual losses under the Facility Act; the only "right" of reimbursement a facility member has when it cedes a policy is the right to receive reimbursement from the Facility for contractual losses.
 
 See
 

 N.C. Gen. Stat. § 58-37-35
 
 (b). While respondent does not have a right to reimbursement, it does have a right to have its request considered.
 
 See
 

 N.C. Gen. Stat. § 58-37-35
 
 (g)(12) (authorizing the Board with discretionary authority to adopt rules such as Rule 5.C.2., as necessary to accomplish the purpose of the Facility).
 

 Thus, Rule 5.C.2.'s clear provision that the Facility may exercise discretion over all petitions wherein the petitioner was not guilty of gross or willful or wanton mishandling of a claim is permissible, and distinct from
 
 Sanchez
 
 , a case involving a town's police powers related to planning and regulation of development.
 

 Therefore, we reverse the superior court's judgment, which affirmed the Commissioner's order to the extent it is inconsistent with the plain reading of Rule 5.C.2., as discussed herein. Accordingly, we need not reach petitioner's contention that the Hearing Officer's erroneous interpretation of this statute exceeded his statutory authority.
 

 We also do not reach the second issue on appeal. The superior court's affirming the Commissioner's determination that petitioner's grounds for the denial of Allstate's petition were not in accordance with the Facility Act, the Facility's Plan of Operation, and the Facility's Standard Practice Manual were made in light of its erroneous interpretation
 
 *857
 
 of Rule 5.C.2. Therefore, we remand to the superior court for further remand to the Commissioner for reconsideration consistent with this opinion.
 
 *626
 
 III.
 
 Conclusion
 

 For the foregoing reasons, we reverse the superior court's judgment and remand to that court for further remand to the Commissioner for reconsideration consistent with this opinion.
 

 REVERSED AND REMANDED.
 

 Judges TYSON and MURPHY concur.
 

 [1]
 

 This statute was subsequently amended by S.L. 2005-331, § 1, eff. Aug. 26, 2005, and now provides: "Whenever the acquisition of real property for a program or project undertaken by an agency will result in the displacement of any person, such agency
 
 shall
 
 make a payment to any displaced person, upon application as approved by the head of the agency."
 
 N.C. Gen. Stat. § 133-8
 
 (2017) (emphasis added).